UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEBORAH WALTON, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) NO. 1:11-cv-00417-JMS-MJD |
| | ) |
| CHASE HOME FINANCE LLC, | ) |
| EXPERIAN INFORMATION SOLUTIONS, | ) |
| INC., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON PLAINTIFF'S MOTION TO DISQUALIFY**

This matter is before the Court on Plaintiff Deborah Walton's ("Walton") Motion to Disqualify the law firm Bose McKinney & Evans LLP ("Bose McKinney") from representing Defendant JPMorgan Chase Bank, N.A. ("Chase") due to a conflict of interest [Dkt. 75]. The parties have fully briefed the Motion and the Court held a hearing on the matter on April 10, 2012. For the reasons discussed below, the Court **DENIES** the Motion to Disqualify.

# I. Background

On January 18, 2011, Walton filed the present action against Defendant Chase alleging violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*, the Real Estate Settlement Procedures Act, New York's General Business Law § 349, and Indiana's Consumer Protection Sales Act, Ind Code. § 24-5-0.5, *et seq*. Chase is the current servicer and owner of a mortgage that Walton originally obtained from Washington Mutual Inc. According to Walton, beginning around November 2009, Chase refused to cash her checks for her mortgage payments and reported to Defendant Experian Information Solutions, Inc. that Walton's mortgage was late

1

or delinquent, which adversely affected Walton's credit. Chase maintains that Walton's mortgage is in default and has indicated it might file a counterclaim to foreclose on Walton's property.

Presently at issue is whether Bose McKinney should be disqualified as counsel for Chase, because of a conflict of interest. In 2003, attorneys from Bose McKinney represented Walton in a different litigated matter, which representation concluded in 2004. Thus, Walton is a former client of Bose McKinney.

The prior matter involved an appeal of a state trial court's issuance of a permanent injunction and restraining order against Walton. At issue was whether Walton's property was subject to her homeowners association's Declaration of Covenants and Restrictions, which contained both an entryway easement and a planting easement. When Walton refused to allow the homeowners association access to her property, the association filed a Complaint for Immediate Restraining Order, or Preliminary Injunction, and Damages. The trial court entered an immediate restraining order against Walton and later issued a permanent injunction and restraining order against Walton. Finding that Walton had sufficient notice of the Declaration of Covenant and Restrictions, the Indiana Court of Appeals affirmed the trial court's decision.

In the current matter, Walton alleges that Bose McKinney used information that it gained from its prior representation of Walton against her during a settlement conference held on January 30, 2012. At the settlement conference, a discussion was had regarding the existence of a lien on Walton's property, which information Walton contends Chase obtained from Bose McKinney's prior representation of her. However, in an affidavit submitted in response to the Motion to Disqualify, Chase's counsel, Theodore J. Nowacki, represented that he learned of the lien through an online public records search. [Dkt. 104 Ex. 1].

## II. Standard of Review

Pursuant to Local Rule 83-5(e), the Indiana Rules of Professional Conduct govern the conduct of those practicing in this Court. S.D. Ind. L.R. 83-5(e); *Gen-Cor, LLC v. Buckeye Corrugated, Inc.*, 111 F. Supp. 2d 1049, 1051 (S.D. Ind. 2000). Indiana Rule of Professional Conduct 1.10 provides in relevant part:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 2.2. unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Ind. Prof. R. 1.10(a). Because Walton is a former client of Bose McKinney, the Court turns to Rule 1.9, which provides in relevant part:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interest are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

\*\*\*

(c) A lawyer who has formerly represented a client in a matter or whose present or former law firm has formerly represented a client in a matter shall not thereafter:

> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known.

\*\*\*

Ind. Prof. R. 1.9. Under the Indiana Rules of Professional Conduct, matters are "substantially related … if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Ind. Prof. R. 1.9 comment 3.

With regard to the specific question of disqualification, Seventh Circuit precedent governs. *Gen-Cor LLC*, 111 F. Supp. 2d at 1052. The Seventh Circuit cautions that disqualification is "a drastic measure which courts should hesitate to impose except when absolutely necessary." *Cromley v. Bd. of Ed. of Lockport Twp. High School Dist. 205,* 17 F.3d 1059, 1066 (7th Cir. 1994) (citing *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)). The Court should view motions to disqualify with "extreme caution for they can be misused as techniques of harassment." *Freeman,* 689 F.2d at 722. Under Seventh Circuit precedent, this Court must "determine whether a substantial relationship exists between the subject matter of the prior and present representations." *Cromley,* 17 F.3d at 1064. In determining whether a substantial relationship exists, the Court first "make[s] a factual reconstruction of the scope of the prior representation." *LaSalle Nat. Bank v. Lake County*, 703 F.2d 252, 255 (7th Cir. 1983). Next, the Court should determine "whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters." *Id.* at 255-56. Lastly, the Court should determine "whether that information is relevant to the issues raised in the litigation pending against the former client." *Id.* at 256. If a substantial relationship exists, there is a presumption of shared confidences. *Cromley*, 17 F.3d at 1064.

## III. Discussion

### A. No Substantial Relationship Exists Between The Subject Matter Of The Prior Matter And The Present Representation.

Walton would have this Court focus on the fact that a presumption of shared confidences exists, which Bose McKinney is not able to rebut. However, before any presumption arises, Walton has the burden of proving a substantial relationship exists between the subject matter of the prior and current matters. In her briefs, Walton glosses over this issue by focusing on the fact

4

that both cases involved Walton's property. In her brief in support of her Motion, the analysis consists entirely of the following, "it seems self-evident that because the prior representation involved Walton's property and the subject matter of the present action is Walton's property and Walton's payment for Chase's loan on the subject property that there is a substantial relationship between the subject matter of the prior and present representations." [Dkt. 77 at 6].

However, a substantial relationship between the subject matters of the prior and current representations is far from self-evident. In fact, at oral argument, Walton's counsel conceded that the fact that both cases involved the same property does not mandate a disqualification. [April 10, 2012 Oral Argument at 9:48 a.m.]. Despite repeated invitations during oral argument to provide any relationship between the prior and current matters, beyond the fact that both involve the same property, Walton's counsel was unable to provide any such relationship. Nonetheless, the Court will consider the Seventh Circuit's three-step analysis for determining whether a substantial relationship exists.

**1. Scope Of The Prior Representation**

Chase argues that, in the prior case, Bose McKinney attorneys represented Walton in the Indiana Court of Appeals in a matter that involved whether Walton's property was subject to her homeowners association's covenants and easements. [Dkt. 104 at 5]. That appellate matter ended in 2003, while the mortgage that is the subject of this litigation did not come into existence until 2007. Furthermore, the prior matter did not involve any mortgage on Walton's property, nor did it involve any errors in Walton's credit report, or any alleged deceptive conduct by Chase. The scope of the prior representation was limited to the trial court record and the arguments on appeal were legal in nature focusing on whether Walton's property could be subjected to her homeowners association's covenants and easements.

5

2. **Whether It Is Reasonable To Infer That The Confidential Information Allegedly Given Would Have Been Given To A Lawyer Representing Walton In The Prior Matter**

Given the limited scope of the prior representation, it is not reasonable to infer that Walton would give the Bose McKinney attorneys in the prior matter any confidential information relevant to the current matter. The Court notes that the only "confidential information" that Walton alleged Bose McKinney possessed, that might be relevant to this matter, was information regarding the lien on Walton's property. The Court finds that information not to be confidential in the first place. Information regarding liens on real property are matters of public record and, by definition, cannot be confidential. The Court also notes that Bose McKinney's representation in the prior matter was limited to the appeal, so the relevant facts at issue were limited to the public trial court record, further reducing the relevance of, and therefore, the likelihood of disclosure of, any confidential information.

During the hearing on this Motion, the Court repeatedly asked Walton's counsel to identify any categories of confidential facts, that might be relevant to the pending matter, that Walton could have disclosed to Bose McKinney in the prior matter. Walton's counsel was unable to articulate any such facts.

Walton could not have given her attorneys confidential information about the mortgage at issue in this matter, because the mortgage did not exist in 2003. Thus, the relevant information in the prior matter consisted of information that was publically available, and which pre-dated the mortgage at issue in this matter, making it unreasonable to infer that Walton gave any confidential information relevant to the present matter to the Bose McKinney attorneys in the prior matter.

### 3. The Relevance Of The Confidential Information To the Issues Raised In The Pending Litigation

Even assuming Walton shared confidential information in the prior matter, that information would have to be relevant in the current matter. Walton's Complaint alleges that Chase improperly reported her mortgage as late or delinquent and engaged in deceptive conduct, which violated state and federal statutes. [Dkt. 44]. Therefore, the subject matter of this matter involves Chase's conduct with regard to the 2007 mortgage and has nothing to do with the subject matter of the prior matter, which involved a property dispute with Walton's homeowners association. In the current matter, the only relevant information is whether Chase's conduct, which occurred years after Bose McKinney's representation in the prior matter ended, violated federal or state laws. Thus, any confidential information that Walton might have shared back in 2003 would have no relevance to her current claims against Chase.

Even if Chase filed a counterclaim seeking to foreclose on Walton's property, any confidential information shared in 2003 would have no relevance to the foreclosure action. The only relevant issue in the foreclosure would be whether, under the terms of the 2007 mortgage, Chase had the right to foreclose on Walton's property. All the relevant events and documents giving rise to the foreclosure action postdate the prior matter; most importantly, the mortgage itself postdates the prior matter. Additionally, the payments that Walton made on her mortgage, that Chase allegedly improperly rejected, occurred years after the prior matter concluded. Thus, any confidential information Walton shared in the prior matter would have no relevance in the current matter.

Walton has failed to demonstrate any relationship between the prior matter and the current matter, much less the substantial relationship required by Rule 1.9. That both matters involve the same property does not mean that the two matters are substantially related. The two

matters involve completely different legal issues with no overlapping facts. Additionally, the prior matter ended years before the mortgage at issue in this matter came into existence and years before Chase's allegedly deceptive conduct. Thus, no conflict of interest exists that would require Bose McKinney's disqualification.

**B. Walton Has Waived Her Right To File A Motion To Disqualify**

Even if a substantial relationship existed between the prior matter and the current matter, Walton has waived her right to object. Courts have repeatedly held that "[a] motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion," otherwise, the delay constitutes a waiver. *Kafka v. Truck Ins. Exchange*, 19 F.3d 383, 386 (7th Cir. 1994) (citation omitted); *see also Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 731 (11th Cir. 1988); *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87-88 (9th Cir. 1983). Such a delay raises the specter that disqualification is being sought as a litigation tactic, rather than for any proper purpose.

Here, despite the outrage expressed by Walton in her affidavit, Walton waited almost a full year from the time a Bose McKinney attorney first filed an appearance in this matter on March 29, 2011 to the time she filed her Motion to Disqualify on March 7, 2012. That entire time Walton knew that attorneys with Bose McKinney previously represented her, but waited until eight days before the dispositive motion deadline and after liability discovery had closed to file her Motion to Disqualify. Additionally, Walton's counsel acknowledged at oral argument that he became aware of the prior representation several months before filing the current Motion, but failed to bring it to the Court's attention. [April 10, 2012 Oral Arguments at 9:53 a.m.]. Accordingly, the Court finds that Walton's delay in raising the disqualification issue constitutes a waiver of her right to object to Bose McKinney's representation of Chase in the current matter.

## IV. Conclusion

For the reasons discussed above, the Court **DENIES** Walton's Motion to Disqualify. [Dkt. 75].

Dated: 04/23/2012

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution List:

All Electronically Registered Counsel