# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

DEBORAH WALTON,

                      **Plaintiff,**

                **v.**                        **No.: 11-CV-00417 (JMS) MJD**

CHASE HOME FINANCE, LLC; and EXPERIAN INFORMATION SOLUTIONS, INC.

                      **Defendants.**

**MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT, AND IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

SADIS & GOLDBERG, LLP

Samuel J. Lieberman

551 Fifth Avenue, 21st Floor

New York, NY 10176

Dated:  October 22, 2012

## PRELIMINARY STATEMENT

Summary judgment should be granted for Ms. Walton on her RESPA claim, default judgment entered in her favor on all claims, and Chase Home Finance LLC's ("Chase") cross-motion for summary judgment under FCRA should be denied.   In particular:

- Chase fails to address Walton's January 12 and March 18, 2010 letters, to which Chase never replied as required by RESPA.  These were qualified written requests as a matter of law under *Catalan* because they identified Ms. Walton and her disputes.

- Chase's response to the October 25, 2010 qualified written request violated RESPA by failing to provide the information requested or explain why the information was not available.  Further, Chase improperly failed to provide contact information for the various "departments" it claimed would later provide the requested information.

- Walton has shown actual damages under RESPA based on her late fees and expenses charged by Chase; her damaged credit rating preventing her from refinancing or getting a new home mortgage; her increased interest payments; and her tax penalties and interest due to Chase failing to provide her with requested tax information.

- Chase's motion under FCRA fails because undisputed evidence shows it received at least seven notices of Walton's credit disputes through Forms ACDV.  And Chase did not perform a reasonable investigation since failed to consider (i) Walton's prior disputes and attempts to pay her loan, or report her ongoing disputes, (ii) conflicts in its reports to credit agencies; and (iii) underlying account documents.

- Default judgment for Walton is warranted because Chase still has not answered the Amended Complaint over 7.5 months after the deadline.  This long delay disproves excusable neglect, particularly since Chase was reminded over a month ago.  Walton has been prejudiced by this because discovery ended long ago.

I.     **SUMMARY JUDGMENT ON THE RESPA CLAIM IS WARRANTED BECAUSE CHASE FAILED TO RESPOND TO THE JANUARY 12 AND MARCH 18, 2010 REQUESTS, AND ITS OCTOBER 25 RESPONSE WAS DEFICIENT**

Chase's Opposition Brief fails to save it from liability for RESPA violations, because it entirely fails to address Walton's January 12 and March 18, 2010 letters, which are plainly qualified written requests to which Chase did not respond.  Nor does Chase address the fact that it plainly violated RESPA by continuing to report negative activity about Walton "[d]uring the 60-day period" starting from its receipt of those letters.  12 U.S.C. § 2605(a)(3).  In addition, Chase offers no basis for excusing its failure to timely provide the information requested in Walton's October 25, 2010 request, or provide relevant contact information.  Finally, Chase's argument against actual damages ignores that Walton incurred late fees and expenses, increased interest rates from being unable to refinance, and tax penalties.

A.  **Chase Violated RESPA By Failing to Respond to the January 12 and March 18, 2010 Requests, While Continuing to Make Negative Credit Reports**

Chase's Opposition Brief does not – because Chase cannot – offer any defense to Chase's failure to provide a response to Walton's January 12, and March 18, 2010 letters disputing Chase's negative reporting of her accounts.  Both of these letters were qualified written requests under the Seventh Circuit's decision in *Catalan v. GMAC Mortgage Corp.*, because they "reasonably identify the borrower and account" and "include[s] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error."  629 F.3d 676, 687

(7th Cir. 2011); *id.* at 680 (same (quoting 12 U.S.C. § 2605(e)(1)(B)). *Such* letters are qualified

written requests – even without the formal title "qualified written request" – because "RESPA

does not require any magic language before a servicer must construe a written communication

from a borrower as a qualified written request respond accordingly." *Id.* at 687.

     *First*, the January 12, 2010 letter was sent by Ms. Walton's attorney at the time to Chase,

and specifically identified the borrower as "Deborah Walton," provided her address, and

specifically identifies her account as "Loan Ending 9458." (Ex. 14 to Decl. of Samuel J.

Lieberman (hereinafter "Reply Decl."), at 1.) This letter also references several "disputes my

client has raised with Chase," and specifically identified three disputes about Walton's account.

(*Id.*) These disputes included (i) "Chase's escrow analysis includes the payment of a forced

place insurance policy on and after November 2009 when the property was insured by Ms.

Walton and proof…has already been provided"; (ii) "Chase has taken it upon itself to improperly

pay the contested tax amounts and also improperly assess that payment against the escrow

account of my client, resulting in an illusory deficiency"; and (iii) Walton had "repeatedly

tendered and offered to tender the regular mortgage payments to Chase, and Chase has refused to

accept them…apparently because of a demand for the improperly assessed insurance and real

estate tax payments." Further, the January 12 letter noted Ms. Walton's request for "you to talk

to me," *i.e.*, her attorney about the disputed at issue. (*Id.*)

Similarly, the March 18, 2010 letter directly from Ms. Walton also identifies the borrower as "Deborah Walton," provides an address, and the account no. "Chase Home Loan #...909458." (*Id.* Ex. 15.)  It also specifies Ms. Walton's disputes, such as "Tax and Insurance" disputes involving charges to Walton's account, that Walton tried to pay her mortgage at a Chase branch in November 2009 but was rejected, and that Walton had been told by a Chase employee that it would place a "Stop" on reporting to credit rating agencies on the account.  (*Id.*)  Further, it also contains Ms. Walton's request for "an accounting of my Mortgage Payments nor Escrow Analyses."[1]

Besides *Catalan*, Seventh Circuit courts have repeatedly held that letters from borrowers disputing a lender's assessment of taxes and forced-place insurance to an account are qualified written requests.   For example, in *Vician v. Wells Fargo Home Mortgage,* the court held that the plaintiffs made a qualified written request under RESPA where they "made a written demand on Wells Fargo requesting that it cure the problem concerning force-placed insurance charges that were added to their account."   2006 WL 694740, at *4 (N.D. Ind. Mar. 16, 2006)   And other courts have held that written disputes of the assessments of taxes and fees are also qualified written requests.  *Ploog v. HomeSide Lending, Inc.,* 209 F.Supp.2d 863, 866-67 (N.D. Ill. 2002)

---

[1] The March 18, 2010 letter notes that Ms. Walton sent "a letter back in October" 2009 originally making this request, but she had not received any response.  (*Id.*)  Further, Ms. Walton made a similar prior request for such information in a December 14, 2009 letter to Chase, which also serves as a qualified written request.  (*Id.* Ex. 17.)

(plaintiff sent multiple letters to lender informing it that taxes were incorrectly paid from her account and requesting that the error be corrected. *Id.* at 866); *Chatman v. Fairbanks Capital Corp.*, 2002 WL 1338492, at *7 (N.D. Ill. June 18, 2002) (letter in which plaintiffs disputed certain fees that were added to their account constituted a "qualified written request"). Thus, the January 12 and March 18 letters were qualified written requests under RESPA.

Accordingly, Chase plainly violated RESPA by failing to provide any substantive response to the January 12 and March 18 letters. It is well-settled that a lender's failure to respond is "sufficient" to establish liability "under RESPA." *Vician*, 2006 WL 694740, at *3; *Ploog*, 209 F. Supp. 2d at 868 (plaintiff established RESPA claim based on several "instances of her sending qualified written requests…where she did not receive a response"). Indeed, the Seventh Circuit confirmed this fact in *Catalan*, where it required one of three substantive responses "[w]ithin 60 days after receiving a qualified written request." 629 F.3d at 680.

Here, Chase never addresses the January 12 or March 18, 2010 qualified written requests, and thus fails to rebut Plaintiff's showing that Chase did not respond. *See* Aff. of D. Kassell in Support of Mot. for Partial S.J. ¶¶ 6-7, docket no. 96-2. Accordingly, summary judgment should be granted finding that Chase has violated RESPA. *See, e.g.*, *Weicherding v. Riegel*, 160 F.3d 1139, 1142 (7th Cir. 1998) (summary judgment warranted where no genuine issue of material fact and moving party entitled to judgment as a matter of law).

**B. Undisputed Evidence Shows that Chase Violated RESPA by Making Negative Credit Reports During the 60-Day Period After Receiving the January 12 Request**

Summary judgment is also warranted because undisputed evidence shows that Chase continued to report negative information about Walton during the 60-day period after receiving Walton's January 12, 2010 qualified written request, in violation of 12 U.S.C. § 2605(e)(3). Numerous Forms ACDV produced by Chase and Experian show that Chase made at least four negative reports to credit agencies during the 60-day period, including on January 21, February 2, and February 24, 2010.  (*See* Reply Decl. Exs. 3, 5, 7-8 (Chase Form ACDV's with "update date" of "2/02/2010," "02/24/2010," "1/21/2010," and "1/21/2010" respectively; *id.* Exs. 11-12 (Experian Forms ACDV showing "2/02/2010," and "02/24/2010" reports by Chase).  On each of these Forms ACDV, Chase reported to the credit reporting agencies at this time Walton's account status with a code "78," which means "the account is 60 days past the due date."  (*Id.* Ex. 10 (Chase's Explanation of the Codes).   Chase also reported the "CCC" "compliance condition code" of "XH," (*id.* Exs. 3, 5, 7-8) which means "account previously in dispute – now resolved," (*id.* Ex. 10 at 1 (explaining Chase codes).)

Each of Chase's four negative credit reports against Walton from January 21 to February 24, 2010 violated RESPA.  12 U.S.C. § 2605(e)(3).  RESPA provides that "During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide

6

information regarding any overdue payment, owed by such borrower and relating to such period

or qualified written request, to any consumer reporting agency." *Id.* A lender's violation of 12

U.S.C. § 2605(e)(3) is an independent basis for imposing liability under RESPA. *Catalan*, 629

F.3d at 680-81 ("During the 60-day period after a servicer receives a qualified written request" it

"may not provide information regarding any overdue payment…to any consumer reporting

agency"); *Ploog*, 209 F. Supp. 2d at 868 (plaintiff established "a claim for violation of RESPA"

because lender "provided information to a consumer reporting agency within sixty days of her

sending a qualified written request").

Accordingly, summary judgment is warranted against Chase on Walton's RESPA claim.

There is no dispute that Chase provided negative credit reports about Walton during the

prohibited 60-day period.  Indeed, Chase's own 30(b)(6) witness has admitted this fact.  (Reply

Decl. Ex. 1 (Dep. Tr. of Richarda Winder) at 125-26, 134-36.)

**C. <u>Chase Violated RESPA By Failing to Timely Provide the Information Requested in the October 25, 2010 Letter, and Failing to Provide Contact Information for the "Appropriate Departments" That Held the Requested Information</u>**

Chase also violated RESPA by failing to provide the detailed information requested in

Walton's October 25, 2010 qualified written request, failing to provide an explanation of why

such information was unavailable, and failing to provide contact information for the "appropriate

departments" at Chase that had such information.   Chase's argument that its December 2, 2010

response was an adequate response lacks merit. The December 2, 2010 response nowhere provides the detailed requested information (except as to one of 11 categories), nowhere explains why information is unavailable, and contains no contact information for the "appropriate departments" it asserts has the information.  (Kassell Decl. Ex. A at Ex. G p. 2.).

Indeed, the December 2, 2010 response frankly admits that it did not provide such information, or any explanation of the information being unavailable.  It states that it is only providing information about Walton's "insurance inquiry."  (*Id.* p.1.) As to the other ten categories of requests in the October 25, 2010 letter, the December 2 response merely states "We forwarded your correspondence to the appropriate departments to respond….You will receive confirmation from those departments in separate mailings as soon as the situations are resolved." (*Id.* p. 2.)  Accordingly, Chase neither provided information about, nor gave any explanation for failing to provide, information about Walton's October 25, 2010 requests for:

> "contact information or promissory note and mortgage, monthly principal, interest, and escrow payment, status of loan, complete payment history and fees, expenses history, escrow history, suspense history, interest rate history, escrow statement, loan modification documents, [and] a list of all contacts and related issues." (*Id.*)

Furthermore, Chase nowhere provides an explanation of the "appropriate departments" it claimed had such information, nor provided contact information for those departments.  In fact, the only contact information Chase provided was for an "Insurance Processing Center," which

dealt with the lone insurance information request that Chase had responded to, but did not address the remaining ten categories of information.  (*Id.*)  Thus, it is not surprising that Walton did not receive any of this information until discovery in this action.  (Kassell Aff. ¶ 7.)

Chase's December 2 response thus violated RESPA's requirement that"[n]o matter which action the servicer takes, the servicer must provide a name and telephone number of a representative of the servicer who can assist the borrower."  *Catalan*, 629 F.3d at 680 (citing 12 U.S.C. § 2605(e)(2)(B), (C)).  Further, Chase's December 2 response violated RESPA because it "did not contain an explanation or clarification" of the items request, but rather provided just a "perfunctory response."  *Kesten v. Ocwen Loan Servicing, LLC*, 2012 WL 426933, at *6 (N.D. Ill., Feb. 9, 2012); *accord* 12 U.S.C. § 2605(e)(2)(C)(i).  Chase's failures are particularly egregious considering its admission that it made no corrections or modifications to Walton's account based on the October 25, 2010 request.  (Reply Decl. Ex. 1 at 114-15.)  Accordingly, Chase's December 2 response violated RESPA, warranting a grant of summary judgment.

**D. <u>Walton Has Actual Damages From Chase's RESPA Violations Through Improper Late Fees and Expenses, Damaged Credit Preventing Refinancing and Tax Penalties</u>**

Chase is also misguided in disputing summary judgment based on an alleged failure to show actual damages.  Ms. Walton has provided an undisputed affidavit showing actual and concrete damages suffered from Chase's RESPA violations.  Walton has shown that she has suffered actual damages of at least $450.94 in improper late fees, charges and expenses imposed

by Chase since the date of her January 12, 2010 qualified written request.  (Aff. of D. Walton

dated Oct. 22, 2012 (hereinafter, Walton Decl.) ¶ 11.)   Further, Walton suffered additional

damages of $3,128.60 in improper fees and disputed tax disbursements dating back to the time of

her original October 2009 letter disputing Chase's actions and requesting information.  (*Id.*; *see*

*also* Reply Decl. Ex. 15.)  Indeed, Chase's own documents confirm Walton's actual damages by

detailing such fees.  (Reply Decl. Ex. 13 at CH096.)   Such fees and expenses demonstrate actual

damages under RESPA.  *See Johnston v. Bank of America, N.A.,* 173 F. Supp.2d 809, 813-14

(N.D. Ill. 2001) (plaintiff established "a claim for actual damages that she has suffered as a result

of the Bank's failure to comply with RESPA" based on "late fees that she has incurred").

Walton also has actual damages based on her inability to obtain a refinancing of her

current house, nor a new mortgage for a new house, as a result of Chase's negative reporting in

January through February 2010 and related RESPA violations.   The Seventh Circuit has made

clear that actual damages under RESPA includes losses from the failure to obtain "loans and

credit lines" and similar borrowing terms.  *Catalan,* 629 F.3d at 694.  As Walton has attested,

Chase's negative reporting "badly damaged my credit" and "has prevented me from refinancing

my current mortgage" or obtaining one for a new home at rates of 4-4.5% that have recently been

available, compared to the 6.5% rate of her current mortgage.  (Walton Decl. ¶ 13.)   In fact,

Walton has provided evidence from her real estate and mortgage brokers attesting to Walton's

failed attempts to refinance her current home and obtain a mortgage for a new one throughout 2010.  (*Id.* Exs. A, B.)   Chase's negative reporting during the prohibited period under RESPA thus has caused Walton to pay additional interest on her mortgage of approximately $9,460 per year, and thus amounts to at least $18,920 annually.  (*Id.* ¶ 17.)

Finally, Walton has shown actual damages based on penalties and interest she has incurred for late filing and payment of taxes based on Chase's failure to provide her with a Form 1098 for 2009, and any full statement of her principal, interest and escrow account information for that period.  (*Id.* ¶¶ 7-10, 16.)  This has subjected her to interest payments of at least 3% and penalties of up to 25% for late filing and payment of taxes.

## II.   CHASE'S CROSS-MOTION UNDER FCRA § 1681s-2 FAILS BECAUSE UNDISPUTED EVIDENCE SHOWS IT RECEIVED NOTICE OF DISPUTES FROM CREDIT AGENCIES, AND CHASE UTTERLY FAILED TO CONDUCT A REASONABLE INVESTIGATION INTO THE DISPUTES

Chase's cross-motion on the claim for violation of 15 U.S.C. § 1681s-2 of FCRA, fails because Chase's main argument – that no facts show "Chase received notice from a consumer reporting agency that the credit information was disputed" (Chase Opp. Br. at 11 – has been conclusively disproven.  Further, Chase has failed to conduct any reasonable investigation into Walton's numerous disputes of Chase's reporting to credit rating agencies.[2]

---

[2] Plaintiff requests that this second argument also be considered a ground for summary judgment in plaintiff's favor. Chase did not produce the information relating to its investigation of the credit reporting disputes until *after* summary judgment briefing began – which was the basis for reopening discovery and imposing sanctions against

Chase's *own* Forms ACDV show that Chase received at least seven notices that Walton disputed Chase's reporting.  (*See* Reply Decl. Exs. 3-9, CH103-09.)  These Forms ACDV show that Chase received notice of Walton's seven credit disputes with the credit rating agencies on December 16 and 17, 2009; January 21 and 24, 2010, and February 12, 2010.  As Chase's Rule 30(b)(6) witness and Chase's Supplemental Interrogatory Responses have conceded, "[t]hese ACDVs show that Chase did receive notice from credit reporting agencies about Ms. Walton's dispute of her credit reports."  (*Id.* Ex. 1 at 85; *id.* Ex. 2 at 2.)    Accordingly, Chase's cross-motion for summary judgment under 15 U.S.C. § 1681s-2 fails.

Importantly, Chase's investigation of the credit disputes was unreasonable as a matter of law.  *First*, Chase has admitted that in investigating Walton's credit disputes, it entirely failed to consider Walton's prior complaints, including direct complaints to Chase regarding Chase's reporting on Walton's account.  As Chase's Rule 30(b)(6) witness testified, besides the Form ACDV disputes, Chase did not consider "other disputes from the plaintiff" as "part of the reinvestigation."  (Reply Decl. Ex. 1 at 33.)  Numerous authorities hold that the failure to consider prior complaints is evidence of an unreasonable investigation.  *See, e.g.*, *Watson v. Citi Corp.*, 2008 WL 41863127, at *4 (S.D. Ohio Sept. 5, 2008) (evidence that furnisher should have

---

Chase.  *See* Docket Nos. 122-34, 140, 149.  Accordingly, Plaintiff did not have a fair opportunity to seek summary judgment on Defendants' failure to conduct a reasonable investigation until now.

known from prior disputes and consumer's earlier telephone complaints the underlying facts that furnisher's investigation resulting in verification of debt was unreasonable); C. Wu, E. De Armond, Fair Credit Reporting § 6.10.4.2 at 259 (7th Ed. 2010) ("[T]he furnisher must also consider other information available to it, including earlier complaints or other communications received from the consumer before reinvestigation has begun.").

Chase's failure to consider Walton's direct complaints created major reporting omissions to the credit reporting agencies. Chase did not consider, nor report to the credit agencies, that Ms. Walton had been attempting to pay her mortgage directly to Chase from November 2009 onwards, but that Chase rejected those payments. (Reply Decl. Ex. 1, Dep. Tr. at 105-07 (such reporting "Not done.") Nor did Chase consider – nor report – that it had refused to accept Ms. Walton's payments based on a claim that her payments of "$2,912.34" were less than Chase's asserted amount due of "$4,008," even though Chase's 30(b)(6) witness admitted that Walton submitted numerous payments that when added up would "exceed the $4,000 amount" that Chase had demanded. (*Id.* at 111.) Nor did Chase consider Ms. Walton's assertion that a Chase employee told her that Chase would put a "stop" on reporting on her account through December 2009. (*Id.* at 107-08.)

*Second*, strikingly, Chase's reporting to credit reporting agencies contained several discrepancies that Chase neither considered, nor corrected, in its reporting to the credit reporting

13

agencies. Chase's Rule 30(b)(6) witness has admitted that Chase did not "consider[]" discrepancies with other reports, other ACDV reports in handling each Form ACDV," (*Id.* at 80 ("I'm not aware of anything")), and did not "ever notify…credit reporting companies about the discrepancies" or "get the credit reporting companies to correct the discrepancies," (*id.* at 129). Such discrepancies defeat any claim by Chase that it reasonably investigated the disputed in providing such reports. *See, e.g.*, *Kennedy v. Equifax, Inc.*, 641 F. Supp. 2d 788, 793 (S.D. Ind. 2009) (a reasonable investigation is not established where there are "disputed and ongoing issues" that have not "been corrected"); *Evantash v. G.E. Capital Mortgage Servs.*, 2003 WL 22844198, at *6 (E.D. Pa. Nov. 25, 2003) (failure to accurately convey results of investigation to credit reporting agency triggers liability of credit furnisher, where lender "sent inconsistent messages")

A major discrepancy in Chase's reporting was that Chase repeatedly reported to the agencies the Code "XH" for "account previously in dispute – now resolved," *at the same time that Walton was* vigorously disputing Chase's reporting both with Chase and the agencies. (Id. Ex. 10 at 1.) Chase reported "XH" on six of the seven Forms ACDV, and reported "XB" on only one – code XB indicates that account information is disputed by the consumer. (*Compare id.* Exs. 3, 5-9, *with* Ex. 4.). Yet Chase reported "XH" for no dispute from December 2009 through February 2010 (*id.* Exs. 3, 5-9), *at the same time that Chase was receiving direct complaints*

*from Ms. Walton in December 2009, January 12, 2010, and March 18, 2010 that she continued*

*to dispute Chase's reporting*.  (*Id.* Exs. 14-15, 17.)   Indeed, as noted above, Chase's 30(b)(6)

witness has conceded that Chase never considered Ms. Walton's direct disputes in its Form

ACDV reporting.   (Reply Decl. Ex. 1 at 33.)

It is black-letter law that "[i]f the completeness or accuracy of any information furnished

by any person to any consumer reporting agency is disputed to such person by a consumer, the

person may not furnish the information to any consumer reporting agency without notice that

such information is disputed by the consumer." 15 U.S.C. § 1681s-2(a)(3).  Indeed, the FTC has

ruled that it is "a violation of FCRA" to "fail[] to report accounts as 'disputed' to consumer

reporting agencies as required by Section 623(a)(3) of the Fair Credit Reporting Act, 15 U.S.C. §

1681s-2(a)(3), when consumers dispute accounts either in writing, orally, or by electronic

means." *Consent Decree in U.S. v. Performance Capital Mgmt.*, (Bankr. C.D. Cal. Aug. 24,

2000), *available at*, http://www.ftc.gov/os/2000/08/performconsent.htm.   And courts have held

that failing to report that a debt is disputed creates an independent basis for liability under

FCRA.  *See Saunders v. Branch Banking & Trust Co. of Va.,* 526 F.3d 142, 149-50 (4th Cir.

2008) ("[T]he decision to report the debt without *any* mention of a dispute was misleading in

such a way and to such an extent that it can be expected to have an adverse effect" and thus

actionable under FCRA).

15

Chase had several other notable discrepancies in its reporting which fundamentally undermine the reasonableness of its investigation.  For example, on January 21, 2010, Chase Reported Walton's account as "1" for 30 days past due to TransUnion, *on the exact same date* that it reported to Equifax a "D" for Walton's account – indicating no history is available.  (*Compare* Reply Ex. 7 at CH107, *with* Ex. 8 at CH108.)   Yet Chase never notified these two agencies of the discrepancies nor take action to correct them.  (*Id.* Ex. 1 at 129.)   Likewise, Chase never contacted Equifax to correct Equifax's record of "11/01/2007" as the first date of Walton's delinquency – when December 1, 2009 was the proper date – even though Chase's Rule 30(b)(6) witness admitted that Equifax got the incorrect information from Chase.  (*Id.* Ex. 1 at 67-69, 135-36; Ex. 8 at CH108 ("11/01/2007".)  And Chase did not correct Experian's report of a "2" for 60 days overdue in January 24, 2012 despite there being a litigation hold on Walton's account at the time.  (*Id.* Ex. 4 at CH104; Ex. 1 at 128.)   In sum, Chase's serial discrepancies in its reporting defeats any claim of a reasonable investigation.  *See Kennedy,* 641 F. Supp. 2d at 793 (S.D. Ind. 2009).

*Third*, Chase has admitted that it has no evidence that it considered the underlying original mortgage documents and account documents in conducting its investigations of Ms. Walton's credit disputes.  Chase's 30(b)(6) witness testified that Chase did not "have any evidence" that it "consulted the underlying mortgage document in filling out the Form ACDV."

(Chase 30(b)(6) Dep. Tr. at 80-81).  Further, Chase admitted that "We don't have that proof" that the persons who handled Chase's Form ACDV responses "actually accessed the underlying records" of Ms. Walton's account in filling out each Form ACDV.  (*Id.* at 83-84.)  In fact, Chase's witness testified that its procedures for handling Form ACDV responses are those that are stated in Chase's Supplemental Interrogatory response, which does not include reviewing underlying account documents.  (Reply Ex. 1, Chase 30(b)(6) Dep. Tr. at 78-79.)  Supplemental interrogatory is "full statement of what was done….Correct, that's the full statement." And there was nothing "else considered." (*Id.* at 79.); *accord id.* at 112-13.

Courts have repeatedly held that a credit furnisher's investigation is not reasonable as required by FCRA's 15 U.S.C. § 1681s-2 where it does not "consult underlying documents such as account applications."  *Johnson v. MBNA Am. Bank*, 357 F.3d 426, 431 (4th Cir. 2003) (holding that mere cursory review of internal electronic system was insufficient).[3]  Chase has no evidence that it reviewed the underlying original records, and thus its investigation was deficient.

*Fourth*, Chase's investigation was deficient because Chase failed to "consult with lawyers before providing the ACDV responses" that it provided to credit reporting agencies.

---

[3] *See also Alabran v. Capital One Bank*, 2005 WL 3338663, at *7 (E.D. Va. Dec. 8, 2005) (investigation unreasonable where lender "would not conduct any investigation under any circumstance of even Capitol's own internal files beyond confirming identity."); *Bruce v. First U.S.A. Bank, Nat. Ass'n*, 103 F. Supp. 2d 1135, 1143-44 (E.D. Mo. 2000) (holding that fact that furnisher's "investigation consisted solely of a review of its own internal records" weighed against reasonable investigation).

(Reply Decl. Ex. 1 at 79-80).  This failure to consult lawyers was crucial given Ms. Walton's

ongoing vigorous dispute of the debts at issue, including disputed insurance coverage and tax

assessments.[4]   *Scheel-Baggs v. Bank of Am.*, 575 F. Supp. 2d 1031 (W.D. Wis. 2008)

("Certainly, a jury could find that a company's failure to consult with its own lawyers is

unreasonable for the purpose of § 1681s-2(b)").

Accordingly, Chase's investigation of Ms. Walton's disputes with credit reporting

agencies was not reasonable as a matter of law, and Chase's cross-motion for summary judgment

on the 15 U.S.C. § 1681s-2 claim should be denied.

## III.    DEFAULT JUDGMENT SHOULD BE GRANTED AGAINST CHASE DUE TO ITS FAILURE TO ANSWER THE AMENDED COMPLAINT OVER A YEAR AFTER THAT COMPLAINT WAS FILED AND 7.5 MONTHS TOO LATE

The Court should grant default judgment in Plaintiff's favor under Rule 55(b) because

Chase has failed to file an Answer to the Amended Complaint, more than a year after Ms.

Walton filed the Amended Complaint on September 9, 2011.  *See* Docket No. 42.   Chase's

Answer to the Amended Complaint is now over 7.5 months late for the extended February 3,

2012 deadline.  *See* Docket No. 60.  Chase cannot allege that its failure to file an Answer is due

to excusable neglect given the roughly 8 month delay in filing, and its failure to seek an

extension.

---

[4] In addition, Ms. Walton has established substantial actual damages from Chase's FCRA violations, as set forth in Section I.D above.

Moreover, Chase cannot credibly assert excusable neglect because Plaintiff's counsel contacted Chase's counsel on September 20, 2012 to remind Chase of its failure to file an Amended Answer.  (Reply Decl. Ex. 18.)  Yet over a month has passed, and Chase has failed to file the Answer, or even seek leave of Court.

This delay is unacceptable and has prejudiced Plaintiff.  Summary judgment briefing is concluding, and fact discovery ended months ago.  Further, this is not the only Chase default of its obligations under the Federal Rules of Procedure.  Summary judgment briefing had to be suspended because Chase failed to produce documents concerning its notification by credit reporting agencies of Plaintiff's disputes.  *See* Docket Nos.  122-34.  And even then, Plaintiff had to move to compel Chase to respond to an interrogatory response based on its investigation of plaintiff's credit disputes.  This resulted in an order imposing sanctions against Chase for delaying this case.  *Id.* Nos. 140, 149.   In short, Chase's decision not to file an Answer over 1 year after the Amended Complaint was filed reflects a pattern of Chase delaying and obscuring the facts from plaintiff.  A default judgment is warranted under these circumstances.

Indeed, the Seventh Circuit affirmed a default judgment against where a party failed to file an Answer and "six months had passed from the time the defendants received the service of summons."  *Merrill Lynch Mortgage Corp. v. Narayan*, 908 F.2d 246, 251 (7th Cir. 1990).  In *Narayan*, the court relied on the fact that the party seeking default had previously notified the

19

defaulting party and requested that it file an Answer.  *Id.*  A default judgment is warranted under *Narayan* because plaintiff's counsel reminded Chase of its obligation to file an Answer over a month ago, yet Chase still has not filed one – over 7.5 month after the due date, an a year after the Amended Complaint was filed.

Similarly, another Seventh Circuit court has held that default was warranted where the defendant had not yet filed an answer to an "amended complaint" until "a year later" after the amended complaint was filed.  *U.S. v. Certain Real Property Commonly Known as 21105 116th Street, Bristol, WI*, 845 F. Supp. 2d 961, 964 (E.D. Wisc. 2012).  In *Real Property*, the court relied on the one year delay in filing an answer to the amended complaint, as well as the advanced procedural posture of the case, to rule that default judgment was warranted.  *Id.*; *accord Schuett v. Hanson,* 741 N.W.2d 292, 295-95 (Wisc. 2007) (affirming default judgment based on failure to file answer to amended complaint).  *Real Property* should govern here, because Chase has not filed its Answer over a year after the Amended Complaint was filed, and this case is far into summary judgment briefing.

Accordingly, default judgment should be entered in plaintiff's favor.

## <u>CONCLUSION</u>

For the foregoing reasons, plaintiff's partial motion for summary judgment on its RESPA claim should be granted, as should plaintiff's motion for default judgment on all claims.  And

Chase's cross-motion for summary judgment on the claim under 15 U.S.C. § 1681s-2 should be

denied.

Dated:  New York, New York
        October 22, 2012

<div style="margin-left:50%;">

s/ Samuel J. Lieberman

Samuel J. Lieberman *Pro Hac Vice*

Sadis & Goldberg LLP

551 Fifth Avenue, 21st Floor

New York, NY 10176

(212) 573-8164

(212) 573-8149

slieberman@sglawyers.com

*Attorneys for Plaintiff*

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2012, a copy of the foregoing Plaintiff's

Memorandum of Law in Further Support of Plaintiff's Partial Motion for Summary Judgment, in

Opposition to Defendant's Cross-Motion for Partial Summary Judgment, and in Support of

Plaintiff's Motion for Default Judgment was filed electronically.  Service of this filing will be

made on all ECF-registered counsel by operation of the court's electronic filing system.  Parties

may access this filing through the court's system

s/ Samuel J. Lieberman
Samuel J. Lieberman *Pro Hac Vice*
Sadis & Goldberg LLP
551 Fifth Avenue, 21st Floor
New York, NY 10176
(212) 573-8164
(212) 573-8149
slieberman@sglawyers.com

*Attorneys for Plaintiff*