UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEBORAH WALTON, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:11-cv-00417-JMS-MJD |
| | ) | |
| CHASE HOME FINANCE LLC, | ) | |
| *Defendant.* | ) | |

## **ORDER**

Presently before the Court in this action brought under New York's General Business Law ("GBL"), Indiana's Consumer Protection Sales Act ("ICPSA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Fair Credit Reporting Act ("FCRA") are three motions: (1) Plaintiff Deborah Walton's Motion for Partial Summary Judgment (on her RESPA claims), [dkt. 100]; (2) Defendant Chase Home Finance LLC's ("Chase") Cross-Motion for Summary Judgment on Counts V and VI (the FCRA claims), [dkt. 120]; and (3) Ms. Walton's Motion for Leave to File Sur-Reply Brief in Opposition to Defendant Chase Home Finance, LLC's Cross-Motion for Partial Summary Judgment Under Local Rule 56.1(d), [dkt. 162].[1]

The Court notes at the outset that Ms. Walton cites only to her Amended Complaint, [dkt. 44], and the exhibits attached thereto, in the "Statement of Material Facts Not In Dispute" contained in her opening brief supporting her Motion for Partial Summary Judgment. [Dkt. 101 at 2-6.] Similarly, in response to Ms. Walton's Motion for Partial Summary Judgment and in support of its Cross-Motion for Summary Judgment, Chase designates as evidence only the Amend-

---

[1] Neither Ms. Walton nor Chase has moved for summary judgment on Ms. Walton's GBL or ICPSA claims.

ed Complaint.  [Dkt. 121 at 1.][2]  Federal Rule of Civil Procedure 56 requires that a party asserting undisputed facts must support those facts by citation to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials…."  Fed. R. Civ. P. 56(c)(1)(A).  Citing to allegations in a complaint does not comply with Rule 56.  *See, e.g., Shoppell v. Schrader*, 2010 U.S. Dist. LEXIS 100074, *6 (N.D. Ind. 2010) ("Unfortunately, [defendant's] opposition to the motions for summary judgment relies heavily on citations to her complaint, which of course is not evidence").

Additionally, the parties' practice of failing to provide citations to specific pages or paragraphs in the Amended Complaint, and instead just citing generally to it or not providing any citations at all for the facts they set forth, violates Local Rule 56-1(e) ("A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence….The citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence").

This failure to comply with Rule 56 and Local Rule 56-1(e), combined with the parties' haphazard briefing as discussed below, has made the Court's evaluation of the pending motions unnecessarily cumbersome.  Indeed, in a March 20, 2012 entry, Magistrate Judge Dinsmore specifically warned counsel of the need to comply with Local Rule 56-1(e)'s requirement that each assertion of fact be supported with a citation.  [Dkt. 94 at 1.]  The Court expects better of the par-

---

[2] Chase cites to dkt. 42, which is the first version of the Amended Complaint Ms. Walton filed. Ms. Walton re-filed the Amended Complaint at dkt. 44 in order to cure certain procedural defects discussed at a September 7, 2011 status conference with Magistrate Judge Dinsmore.  [Dkt. 43.] Dkts. 42 and 44 are substantively the same, so the Court will cite to dkt. 44 since it is the operative complaint at this time.

ties and counsel, and Rule 56 requires it.[3]  However, because neither party disputes the authenticity of the documents attached to the Amended Complaint, nor the allegations related to those documents, the Court will use the allegations in the Amended Complaint to frame the material facts not in dispute.

## I.
### UNDISPUTED MATERIAL FACTS

Ms. Walton obtained a mortgage loan (the "Mortgage") from Washington Mutual, Inc. ("Washington Mutual") on her property located in Carmel, Indiana.  [Dkt. 44 at 2-3, ¶ 10.]  Subsequently, Chase became the servicer of the Mortgage.  [*Id.* at 3, ¶ 11.]  Sometime before the end of 2009, Ms. Walton discovered that Experian Information Solutions, Inc. ("Experian") was reporting negative information regarding the Mortgage.  [*Id.* at 3, ¶ 16.]

On January 12, 2010, Ms. Walton's counsel wrote on her behalf to Experian to dispute the Mortgage information, stating:

> This letter is to put your credit reporting agency on notice to correct your reports by immediately removing any negative credit information placed on Deborah Walton's accounts by Chase….Notwithstanding Chase's error in this matter, with this letter we are putting your credit reporting agency on notice that the information is inaccurate and should be removed.  Your company's failure to remove this negative entry could result in liability under the Fair Credit Reporting Act and other laws for such defamation.

[Dkt. 44-1 at 1.]

That same day, Ms. Walton's counsel wrote on her behalf to Chase, providing further details regarding Ms. Walton's disputes with the reporting of the Mortgage:

---

[3] The Court is confused by Ms. Walton's counsel's affidavit filed in support of her Motion for Partial Summary Judgment, [dkt. 100], which appears to be for the purpose of authenticating the documents attached to the Amended Complaint.  While this may be the practice in Ms. Walton's counsel's home state of New York, it is not the practice in this district.  Counsel should be cautious about rendering himself a witness in a pending proceeding.

I represent Deborah Walton over issues surrounding the above referenced mortgage, including issues surrounding the escrow analysis and your company's reporting my client's account in a negative way to the major reporting bureaus. I demand that you agree not to report any negative credit information to any of the three major credit reporting entities arising out of this mortgage. If any negative information has been reported, please immediately remove it and send confirmation of its removal to anyone who may have reviewed Ms. Walton's credit while the negative information was pending. This is consistent with the disputes my client has raised with Chase and consistent with agreements Chase's representatives made directly with Ms. Walton….

The disputes surround several areas. First, Chase's escrow analysis includes the payment of a forced place insurance policy on and after November, 2009 when the property was insured by Ms. Walton and proof of that insurance has already been provided to Chase. Therefore, the forced place policy cost is improper and the claims of deficiency arising from that is inaccurate and should be removed.

Second, my client is actively appealing the real estate tax assessments on the property. Notwithstanding this appeal, Chase has taken it upon itself to improperly pay the contested tax amounts and also improperly assess that payment against the escrow of my client, resulting in an illusory deficiency. That charge should be removed.

Third, my client has repeatedly tendered and offered to tender the regular mortgage payments to Chase, and Chase has refused to accept them. The refusal is apparently because of a demand for the improperly assessed insurance and real estate tax payments by Chase. My client demands that you immediately remove those improper assessments and accept her tendered mortgage payments in full satisfaction of any amounts owed, subject to the real estate tax appeal which my client currently has pending.

[Dkt. 44-2 at 2-3.] Ms. Walton's counsel further informed Chase that he was also writing to the three major consumer reporting agencies regarding "any negative entries that Chase may have placed regarding the above referenced account in the last six months," and demanded that Chase "reverse and fully credit [Ms. Walton] for any bills for alleged real estate insurance and real estate taxes…, that Chase accept payments for the months it has refused regular mortgage payments and that Chase[] remove any negative credit reporting it has had regarding this mortgage on Ms. Walton's credit reports and refrain from reporting any new negative credit information or

assessing further escrows until Ms. Walton completes her appeal of the real estate tax issue….”
[*Id.* at 3.]

On March 18, 2010, Ms. Walton wrote to Chase's counsel directly, reiterating her disputes, and stating that she had sent Chase a letter in October "requesting a complete breakdown of my Mortgage Loan Account…and to date I still have not received an accounting of my Mortgage Payments nor Escrow Analyses," that a Chase customer service supervisor informed her that he could see that there was a problem with her rejected payments and that he would "put a Stop" on her account so that the rejected payments would not be reported to the consumer reporting agencies, and that when she checked a week later, Chase had reported the rejected payments to all three consumer reporting agencies.  [Dkt. 44-3 at 2.]

Several months later, on October 25, 2010, Ms. Walton wrote to Chase in a letter drafted by her counsel which began "[p]lease treat this letter as a **'qualified written request'** under [RESPA]."  [Dkt. 44-5 at 2 (emphasis in original).]  In the letter, Ms. Walton requested:

1. The name, address and contact information for the current owner of her Promissory Note and Mortgage;

2. The monthly principal, interest, suspense account and escrow balances for her Mortgage account, along with a breakdown of the monthly principal, interest and escrow payment;

3. The status of her Mortgage account when Chase acquired the Mortgage and when it began refusing to accept her payments;

4. A complete and detailed payment history from Chase;

5. The amount, payment date, purpose, and recipient of all fees and expenses associated with the loan;

6. The amount, payment date, purpose, and recipient of all escrow items charged and/or assessed to her Mortgage account;

7. The monthly balance in any suspense account and the reason why those funds were deposited into that account;

- 5 -

8.  The history of the interest rate changes to her Mortgage account;

9.  A copy of any annual escrow statements and notices of a shortage, deficiency or surplus sent to her;

10. A copy of any loan modifications, workouts or other Loss Mitigation alternatives sent, offered to, and/or completed by her; and

11. A listing of all contacts via telephone or email between Chase and her.

[*Id.* at 2-3.]

Chase responded directly to Ms. Walton on November 13, 2010, in a letter that stated "Your Inquiry is Under Review" at the top and:

I am writing in response to a recent inquiry about your loan.

We are investigating the correspondence we received for your loan, and will provide you with a response in a timely manner.

Chase's goal is to provide the highest level of quality service to each of our customers. If you have any questions, please contact Customer Care at (800) 848-9136.

[Dkt. 44-6 at 2.]

Chase further responded to Ms. Walton's October 28, 2010 letter on December 2, 2010, providing: (1) a list of all insurance premium payments from her escrow account and stating "[e]ach of the payments was for lender placed homeowner's insurance premiums issued to Insureco Group from your account"; and (2) "a detailed listing of all refunds credited to your account." [Dkt. 44-7 at 3.] The letter further stated:

Our records show lapses in homeowner's insurance coverage remain for the periods of January 29, 2008 to August 18, 2008 and November 8, 2008 to November 8, 2009. If you had coverage for these periods, please ask your agent to send evidence of insurance to the Chase address stated on the letterhead….

We forwarded your correspondence to the appropriate departments to respond to your request for the contact information of promissory note and mortgage, monthly principal, interest, suspense account, escrow balances, with breakdown of

monthly principal, interest, and escrow payment, status of loan, complete payment history and fees, expenses history, escrow history, suspense history, interest rate history, escrow statement, loan medication documents, a list of all contacts and related issues.  You will receive confirmation from those departments in separate mailings as soon as the situations are resolved.

[*Id.* at 2-3.]  Chase has not presented evidence that it provided any further responses to Ms. Walton's October 25, 2010 letter.

On December 16, 2010, Chase's counsel returned five checks to Ms. Walton and stated "[t]hese checks are being returned to your possession while this matter continue[s] to be reviewed."  [Dkt. 44-8 at 2.]

## II.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor.  *See* Fed. R. Civ. Pro. 56.  To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial.  Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. Pro. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. Pro. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. Pro. 56(c)(4).   Failure to properly support a

fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment.  Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003).  Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment.  *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact.  *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).  And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

That cross-motions for summary judgment have been filed does not automatically mean that all questions of material fact have been resolved.  *Franklin v. City of Evanston*, 384 F.3d 838, 842 (7th Cir. 2004).  The Court must evaluate each motion independently, making all reasonable inferences in favor of the nonmoving party with respect to each motion.  *Id.* at 691-92.

### III.
#### DISCUSSION

#### A.  Ms. Walton's Motion for Partial Summary Judgment on Her RESPA Claims

Ms. Walton moves for partial summary judgment on her RESPA claims, which allege that Chase violated § 2605(e) of RESPA by "fail[ing] to provide the information that it is re-

quired to provide…in response to [her] Qualified Written Request," [dkt. 44 at 10-11, ¶¶ 70-73], and by failing to provide an accounting of the Mortgage, [*id.* at 11, ¶¶ 74-78].  Ms. Walton argues that her January 12, 2010, March 18, 2010, and October 25, 2010 letters to Chase were Qualified Written Requests ("QWR") under RESPA, and that Chase did not provide her with the information she requested as required by RESPA.  [Dkt. 101 at 7-8.]  Ms. Walton further argues that Chase violated RESPA § 2605(e)(3) by continuing to report negative information regarding the Mortgage during the 60-day period after receiving her January 12, 2010 QWR.  [Dkt. 151 at 7-8.][4]

Chase asserts that it complied with its RESPA obligations by: (1) acknowledging receipt of Ms. Walton's October 25, 2010 letter within 20 days in its November 13, 2010 response, [dkt. 121 at 4-5]; and (2) directly responding to "each of [Ms.] Walton's requests" in its December 2, 2010 letter by either providing the requested information or advising her that it had forwarded her inquiry "to the appropriate departments to respond to [her] request," [*id.* at 5].  Chase also asserts that Ms. Walton's RESPA claims fail because she "has not come forward with evidence sufficient to support an award of actual damages."  [*Id.* at 6.]  Chase does not discuss Ms. Walton's January 12, 2010 and March 18, 2010 letters – which Ms. Walton contends are QWRs under RESPA, [*see, e.g.*, dkts. 101 at 7-8; 151 at 3-6] – at all.

RESPA defines a QWR as:

[A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that –

---

[4] To the extent Ms. Walton seeks summary judgment on Count VIII, "For An Accounting Pursuant To The RESPA," the Court denies such a request.  Ms. Walton does not set forth any provision in RESPA which would require Chase to provide an "accounting" and, indeed, there is none.  *See, e.g., Aniel v. Litton Loan Servicing, LP*, 2011 U.S. Dist. LEXIS 18870, *5 (N.D. Cal. 2011) ("there is no statutory basis for an accounting under RESPA") (citation omitted).  Instead, Ms. Walton's remedy is to assert a claim for failure to adequately respond to her QWRs, which she has done.

(i)     includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii)    includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

RESPA requires that, upon receipt of a QWR from the borrower or his or her agent "for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days…unless the action requested is taken within such period."  12 U.S.C. § 2605(e)(1)(A).  It also requires that:

Not later than 60 days…after the receipt from any borrower of any [QWR] under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall –

(A) make appropriate corrections in the account of the borrower…;

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes –

(i)     to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii)    the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes –

(i)     information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii)    the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).

As to credit reporting, § 2605(e)(3) states that "[d]uring the 60-day period beginning on the date of the servicer's receipt from any borrower of a [QWR] relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or [QWR], to any consumer reporting agency…." 12 U.S.C. § 2605(e)(3).

The Seventh Circuit Court of Appeals has read RESPA's definition of a QWR broadly, stating:

> RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a [QWR] and respond accordingly. The language of the provision is broad and clear….Any reasonably stated written request for account information can be a [QWR]. To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond.

*Catalan v. GMAC Mort. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011).

### 1. Ms. Walton's Letters and Chase's Responses

#### a. The January 12, 2010 Letter

Ms. Walton argues that her January 12, 2010 letter was a QWR under RESPA because it specifically identified her as the borrower, provided her address, specifically identified her account as "Loan Ending in 9458," and specifically identified three disputes with her account including: (1) Chase's payment of premiums from her escrow account for a forced place insurance policy, when the property allegedly was already insured by Ms. Walton; (2) Chase's payment from her escrow account of tax amounts Ms. Walton was contesting; and (3) Chase's refusal to accept her payments. [Dkt. 151 at 4.] Despite Ms. Walton's argument that the January 12, 2010 letter was a QWR, [dkt. 101 at 7-8], Chase fails to address the January 12, 2010 letter at all in its

- 11 -

response brief.  If Chase wished to set forth an argument that the January 12, 2010 letter was not a QWR, the Court assumes Chase would have done so.  *See Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present….Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief") (quotation omitted).  Accordingly, Chase has waived any argument that the January 12, 2010 letter is not a QWR.  *Marcavage v. City of Chicago*, 659 F.3d 626, 638 (7th Cir. 2011) (failure to respond to argument opposing party made on summary judgment constituted waiver of that argument).

Waiver notwithstanding, Ms. Walton's recitation of the facts that led her to believe her Mortgage account was inaccurate was enough to make her January 12, 2010 letter a QWR under RESPA.  *See, e.g., Baginski v. JP Morgan Chase Bank N.A.*, 2012 U.S. Dist. LEXIS 169754, * 17 (N.D. Ill. 2012) (holding letter which outlined disputes regarding certain escrow payments and noted that Chase had stopped accepting payments from borrower was QWR, and stating "[i]t is true that [plaintiff's] letter requests reinstatement rather than specific information about his account, but we think it sufficiently describes alleged 'errors' to constitute a QWR").  Chase has not presented any evidence that it responded in any way to Ms. Walton's January 12, 2010 letter, which the Court presumes it would have presented if that evidence existed.  Accordingly, the Court finds as a matter of law that Chase violated RESPA §§ 2605(e)(1)(A) and (e)(2).

### b.  *The March 18, 2010 Letter*

Ms. Walton's March 18, 2010 letter is also a QWR.  It noted Ms. Walton's name, the property address, and the account number – information sufficient for Chase to determine the account at issue.  [Dkt. 44-3 at 2.]  Further, in the letter Ms. Walton outlined the issues she was

having with Chase's servicing of the Mortgage (*e.g.*, that Chase would not accept her payments and that a customer service representative advised her he would "put a Stop" on the account, but that Chase still negatively reported the account to the consumer reporting agencies), and why she believed the account was incorrect (*e.g.*, that she was unnecessarily paying into a "forced placed escrow account").  [*Id.*]  This information is sufficient to make the March 18, 2010 letter a QWR under RESPA.[5]

Like the January 12, 2010 letter, Chase does not argue that the March 18, 2010 letter is not a QWR, nor does it claim that it responded in any way to the letter or present any evidence indicating a response.  Accordingly, the Court concludes that Chase violated RESPA §§ 2605(e)(1)(A) and (e)(2) in connection with the March 18, 2010 letter.

### c.   The October 25, 2010 Letter

Ms. Walton's October 25, 2010 letter states "[p]lease treat this letter as a **"qualified written request"** under [RESPA]."  [Dkt. 44-5 at 2 (emphasis in original).]  In its response, Chase does not dispute that the October 25, 2010 letter is a QWR and, in fact, refers to it as such.  [*See, e.g.*, dkt. 121 at 4 ("Chase responded to Walton's QWR within the statutorily required time period and in the manner dictated by the statute").]  Accordingly, the Court will treat the October 25, 2010 letter as a QWR under RESPA.

As for its response to the QWR, Chase argues that it complied with RESPA because: (1) it responded within 20 days under § 2605(e)(1)(A) through its November 13, 2010 letter; and (2) its December 2, 2010 letter was sufficient under RESPA § 2605(e)(2)(B).  [*Id.* at 4-6.]  The Court finds, and Ms. Walton does not argue to the contrary, that Chase's November 13, 2010 let-

---

[5] The Court notes that Ms. Walton sent the March 18, 2010 letter to Chase's counsel, rather than to Chase directly.  Since counsel was acting as Chase's agent, and because Chase has not raised any argument that the letter was not a QWR, the fact that Ms. Walton sent the letter to counsel does not alter the Court's analysis.

ter satisfied its obligations under § 2605(e)(1)(A) because the letter acknowledged receipt of Ms. Walton's October 25, 2010 letter within 20 days.

As for Chase's December 2, 2010 letter, Ms. Walton argues that it does not comply with RESPA because Chase did not provide all of the information Ms. Walton requested, did not provide any reason why it was unable to provide all of the information, and did not provide contact information for the departments it claimed had the relevant information. [Dkts. 101 at 4-5; 151 at 8-10.] Chase argues that its December 2, 2010 letter "addressed each of [Ms. Walton's] requests," [dkt. 121 at 5], and complied with RESPA.

In the October 25, 2010 letter, Ms. Walton requested eleven categories of information: (1) information regarding the current owner of the mortgage; (2) certain account and escrow balances, with a breakdown of monthly principal, interest, and escrow payments; (3) the status of the Mortgage when Chase acquired the Mortgage and when Chase began refusing Ms. Walton's payments; (4) a complete payment history from when Chase acquired the Mortgage; (5) information regarding all fees and expenses associated with the Mortgage; (6) information regarding all escrow items, including taxes and forced placed insurance; (7) information regarding "any suspense account"; (8) the history of interest rate changes to the Mortgage; (9) a copy of the annual escrow statements and notices of shortage, deficiency or surplus; (10) a copy of any loan modifications; and (11) a list of all contacts between Chase and Ms. Walton or her agents. [Dkt. 44-5 at 2-3.]

RESPA required that, within 60 days of the October 25, 2010 letter, Chase had to provide "(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance

- 14 -

to the borrower." 12 U.S.C. § 2605(e)(2). In the December 2, 2010 response, Chase provided an itemization of escrow payments for forced placed homeowner's insurance premiums, a list of all refunds credited to Ms. Walton's account, and the dates that homeowner's insurance coverage had lapsed. [Dkt. 44-7 at 3.] The letter then stated "[w]e forwarded your correspondence to the appropriate departments to respond to your request for the contact information of promissory note and mortgage, monthly principal, interest, suspense account, escrow balances, with break-down of monthly principal, interest, and escrow payment, status of loan, complete payment history and fees, expenses history, escrow history, suspense history, interest rate history, escrow statement, loan modification documents, a list of all contacts and related issues. You will receive confirmation from those departments in separate mailings as soon as the situations are resolved." [*Id.* at 2.] The letter provided a number for the "Insurance Processing Center" for further questions. [*Id.*]

The Court finds that Chase's December 2, 2010 letter was not sufficient to comply with § 2605(e)(2). While Chase provided some of the information requested, it simply stated that it had forwarded the other requests to the appropriate departments but did not explain why the information was not available at that point. Additionally, Chase has not put forth any evidence that these other departments provided the requested information within the 60-day deadline. Accordingly, the Court finds that Chase violated RESPA § 2605(e)(2) in connection with the October 25, 2010 letter and its December 2, 2010 response.

### 2. *Actual Damages In Connection With the RESPA Violations*

While the Court has found that Chase did not comply with RESPA in its handling of Ms. Walton's January 12, 2010, March 18, 2010, and October 25, 2010 letters, that finding does not necessarily mean that Ms. Walton is entitled to damages. In order to succeed on her RESPA

claim, Ms. Walton must prove that Chase's RESPA violations caused her actual damages.[6]  *See Catalan*, 629 F.3d at 693 ("Plaintiffs must come forward with evidence sufficient to support an award of actual damages to pursue their RESPA…claim[]").

Chase argues that Ms. Walton only generally alleged actual damages in her Amended Complaint.  [Dkt. 121 at 6.]  Ms. Walton replies that she has suffered the following actual damages: (1) $450.94 in improper late fees, charges and expenses imposed by Chase since her January 12, 2010 QWR; (2) $3,128.60 in improper fees and disputed tax disbursements "dating back to the time of her original October 2009 letter disputing Chase's actions and requesting information"; (3) damages "based on her inability to obtain a refinancing of her current house, nor a new mortgage for a new house, as a result of Chase's negative reporting in January through February 2010"; and (4) "penalties and interest…incurred for late filing and payment of taxes based on Chase's failure to provide her with a Form 1098 for 2009, and any full statement of her principal, interest and escrow account information for that period."  [Dkt. 151 at 10-12.]

Ms. Walton did not present evidence of actual damages in her brief in support of her Motion for Partial Summary Judgment.  [Dkt. 101.]  Instead, she only addressed the issue of actual damages in her reply brief,[7] which meant that Chase did not have a chance to address her "evidence" of actual damages in its initial response.  While the Court has relaxed Rule 56's evidentiary requirements in the interest of moving the case forward in an efficient manner, it cannot ignore the principle that arguments raised for the first time on reply are waived.  *Hess v. Reg-*

---

[6] While RESPA also provides that a plaintiff can recover "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000," 12 U.S.C. § 2605(f)(1)(B), Ms. Walton has not alleged that Chase engaged in any type of "pattern or practice of noncompliance" here.

[7] It does not appear that Ms. Walton's failure to present evidence to support her actual damages claim in her opening brief had anything to do with Chase's late discovery responses, because that evidence was within Ms. Walton's control from the outset.

*Ellen Mach. Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005).  Because Ms. Walton failed to present evidence of actual damages (a statutory requirement) in her initial brief, the Court cannot grant summary judgment on her RESPA claim.

Rule 56 encourages courts, where appropriate, to grant summary judgment on only part of a claim through findings of fact.  Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case").  While the Court finds that Ms. Walton has established certain elements of her RESPA claim – that the January 12, 2010, March 18, 2010, and October 25, 2010 letters were QWRs, and that Chase did not comply with RESPA in responding, or failing to respond, to them – it cannot conclude from the facts before it that those violations caused Ms. Walton actual damages. The determination regarding whether Ms. Walton suffered actual damages related to Chase's failure to adequately respond to her QWRs and, if so, in what amount, is reserved for another day.

### 3.  Section 2605(e)(3)

Ms. Walton argues for the first time in her reply brief in support of her Motion for Partial Summary Judgment that Chase violated 12 U.S.C. § 2605(e)(3) by continuing to report negative information regarding the Mortgage during the 60-day period following receipt of her January 12, 2010 QWR.  [Dkt. 151 at 7-8.]  While she alleges a general violation of § 2605(e) in her Amended Complaint, [dkt. 44 at 10-11, ¶¶ 70-73], she only mentions Chase's failure to "provide the information that it is required to provide by the RESPA in response to Plaintiff's [QWR]." [*Id.* at 11, ¶ 72.]  Nowhere in the Amended Complaint does Ms. Walton specifically mention Chase's alleged reporting of negative information regarding the Mortgage within the 60-day pe-

riod following receipt of the January 12, 2010 QWR.  Additionally, Ms. Walton does not argue in her Motion for Partial Summary Judgment or the supporting brief that Chase violated § 2605(e)(3).

Because Ms. Walton raises her argument regarding § 2605(e)(3) for the first time on reply, the Court denies her Motion for Partial Summary Judgment to the extent it relates to any claim that Chase has violated that section of RESPA.  *Hess*, 423 F.3d at 665 (arguments raised for the first time in a reply brief are waived).

### B.  Chase's Cross-Motion for Summary Judgment on the FCRA Claims

Chase has cross-moved for summary judgment on Ms. Walton's claims brought under FCRA §§ 1681i and 1681s-2(b).

#### 1.  *Section 1681i*

Chase argues that Ms. Walton's § 1681i claim fails because that section of the FCRA only applies only to consumer reporting agencies.  [Dkt. 121 at 7-9.]  Ms. Walton does not respond to Chase's argument, appearing to abandon her § 1681i claim.  Chase is correct, and Ms. Walton's § 1681i claim fails as a matter of law.  *See Walton v. Bank of Am.*, 2012 U.S. Dist. LEXIS 21206, *7 (S.D. Ind. 2012) ("[t]he plain language of § 1681i creates duties and obligations for credit reporting agencies.  Because neither [defendant] is a credit reporting agency they are not subject to § 1681i").[8]  Accordingly, the Court grants summary judgment in favor of Chase on Ms. Walton's FCRA § 1681i claim.

---

[8] The Court cautions Ms. Walton and her counsel regarding the pursuit of claims that they know, or should have known, are frivolous.  The *Walton* case the Court cites was brought by Ms. Walton against different defendants, but asserted the same § 1681i claim she asserts here in a very similar context.  While Ms. Walton proceeded *pro se* in that case, after that claim was dismissed she was on notice that a § 1681i claim can only be brought against a consumer reporting agency, and her counsel could have discovered that through even cursory legal research.

2. *Section 1681s-2(b)*

Chase argues at length in support of its motion for summary judgment that Ms. Walton did not present any evidence that Chase received notice from a consumer reporting agency that she was disputing the Mortgage account – a prerequisite to liability under § 1681s-2(b). [Dkt. 121 at 11-13.] Chase then briefly notes that "[e]ven if Chase's duty to investigate under § 1681s-2(b) was triggered, [Ms.] Walton failed to plead even one specific fact regarding Chase's investigation." [*Id.* at 14.]

Ms. Walton responds that Chase's own documents show that it received at least seven notices of Ms. Walton's disputes. [Dkts. 151 at 13; 152-4; 152-5; 152-6; 152-7; 152-8; 152-9; 152-10.] Further, she requests summary judgment in *her* favor on the § 1681s-2(b) claim – despite the fact that her Motion for Partial Summary Judgment did not apply to that claim – because "Chase did not produce the information relating to its investigation of the credit reporting disputes until *after* summary judgment briefing began – which was the basis for reopening discovery and imposing sanctions against Chase….Accordingly, Plaintiff did not have a fair opportunity to seek summary judgment on Defendants' failure to conduct a reasonable investigation until now." [Dkt. 151 at 12-13, n. 2 (emphasis in original).]  Ms. Walton goes on to argue that Chase's investigation into her disputes was inadequate as a matter of law because: (1) Chase has admitted that it did not consider her prior complaints, [*id.* at 13-14]; (2) Chase's reporting to the consumer reporting agencies contained discrepancies that Chase did not consider or correct, [*id.* at 14-17]; (3) Chase has no evidence that it considered the original mortgage documents or account documents in investigating the disputes, [*id.* at 17-18]; and (4) Chase did not "consult with lawyers" before responding to the consumer reporting agencies regarding Ms. Walton's disputes,

[*id.* at 18-19].[9]  Chase replies that, for various reasons, it conducted a reasonable investigation of all of Ms. Walton's disputes and that the information it provided to the consumer reporting agencies was accurate.  [Dkt. 157 at 4-9.]

Once a consumer reporting agency notifies a furnisher that a consumer has disputed an account, "the furnisher of information must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided to it by the consumer reporting agency; (3) report the results of the investigation to the agency; and (4) if the information is found to be inaccurate or incomplete, report the results to all consumer reporting agencies to which it originally provided the erroneous information."  *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (citing 15 U.S.C. § 1681s-2(b)).  "Whether the defendant's investigation [under § 1681s-2(b)] is reasonable is a question of fact reserved for a jury… '[H]owever, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question.'"  *Kennedy v. Equifax, Inc.*, 641 F.Supp.2d 788, 792-93 (S.D. Ind. 2009) (citation omitted).

At the outset, the Court notes that Chase's strategy in moving for summary judgment on the § 1681s-2(b) claim is disturbing.  Chase focused almost entirely on its argument that Ms. Walton had not presented evidence that it had received notice of her disputes from a consumer reporting agency and that, accordingly, her § 1681s-2(b) claim failed as a matter of law.  Ms.

---

[9] To the extent that Ms. Walton raises arguments under FCRA §1681s-2(a), [*see, e.g.*, dkt. 151 at 16], the Court disregards those arguments because Ms. Walton does not assert a claim under that section.  She only asserts claims under FCRA §§ 1681i and 1681s-2(b), [dkt. 44 at 8-10, ¶¶ 55-69], and, in any event, there is no private right of action under § 1681s-2(a).  *Perry v. First Nat'l Bank*, 459 F.3d 816, 819, 822 (7th Cir. 2006).

Walton then came forward in her response with seven ACDVs,[10] allegedly produced by Chase after it moved for summary judgment and after the Court ordered Chase to produce documents responsive to Ms. Walton's discovery requests, [dkt. 128], which clearly indicate that Chase *did* receive notice of the disputes from a consumer reporting agency.  In reply, Chase ignores the fact that it spent the bulk of its opening brief arguing that Ms. Walton had not set forth evidence indicating it received notice from a consumer reporting agency, instead stating "[t]he undisputed evidence demonstrates that Chase received ACDVs indicating that [Ms.] Walton advised the [consumer reporting agencies] that she disputed certain account information," [dkt. 157 at 4], and launching into specific arguments regarding why its investigation into Ms. Walton's disputes was reasonable.  The Court is troubled by the fact that Chase advanced an argument it knew was contradicted by the facts, and by documents in its own possession but not yet produced to Ms. Walton.

In another example of haphazard briefing, as a result of Chase's strategy, its arguments regarding the reasonableness of its investigation were made for the first time on reply.  The Court denies Chase's Motion for Summary Judgment on Ms. Walton's § 1681s-2(b) claim because it relied on an argument Ms. Walton has refuted (no notice from a consumer reporting agency), and on arguments raised for the first time on reply, *Hess*, 423 F.3d at 665.[11]

As for Ms. Walton's "motion" for summary judgment on her § 1681s-2(b) claim, made in a footnote in her response to Chase's motion, the Court finds that questions of fact exist which

---

[10] "ACDV" stands for Automated Consumer Dispute Verification, and ACDVs are used for consumer reporting agencies to communicate information regarding consumer disputes to furnishers such as banks.

[11] Because the Court is denying Chase's Motion for Summary Judgment on Ms. Walton's § 1681s-2(b) claim, it denies as moot Ms. Walton's Motion for Leave to File Sur-Reply Brief in Opposition to Defendant Chase Home Finance, LLC's Cross-Motion for Partial Summary Judgment Under Local Rule 56.1(D), [dkt. 162].

make summary judgment inappropriate.[12]  For example, in support of her argument that Chase's investigation was unreasonable as a matter of law because Chase "entirely failed to consider [Ms.] Walton's prior complaints, including direct complaints to Chase regarding Chase's reporting on [Ms.] Walton's account," Ms. Walton cites to a single page from the deposition of Chase's 30(b)(6) witness.  [Dkt. 151 at 12.]  While the deponent stated that "these ACDVs" were the only ones Chase considered and that there were not any other disputes from Ms. Walton considered as part of the reinvestigation, the Court cannot tell which ACDVs counsel and the deponent were referring to, or which dispute investigation was being discussed.[13]  [Dkt. 152-1 at 3.]  Chase argues that "internal records are reviewed" and "the Mortgage Banking Credit Department employee investigated the information within its system related to each particular dispute," citing to the same transcript of Chase's 30(b)(6) witness' deposition.  [Dkt. 157 at 5.]  That witness stated that when Chase employees investigate a dispute, they "look through the loan history to see if, in fact, if a customer has any open cases with certain departments.  And they can view that."  [Dkt. 158-1 at 4.]  This testimony seems to contradict the snippet of testimony Ms. Walton cites to without context, to support her argument that Chase did not look into prior disputes.

Ms. Walton's argument that discrepancies in reporting indicate that Chase's investigation was unreasonable, is similarly unavailing.  The Court notes discrepancies in Ms. Walton's de-

---

[12] While a party moving for summary judgment generally must file a motion and supporting brief, Local Rule 56-1(a), the Court finds compelling Ms. Walton's argument that she was unable to move for summary judgment on her § 1681s-2(b) claim when she filed her initial motion due to Chase's late production of documents relating to that claim.

[13] The deposition transcript page Ms. Walton cites to is provided alone, without any immediately surrounding pages and without any context.  The Court's Practices and Procedures provide that "[w]henever a party relies upon a deposition excerpt to support or oppose a motion, the party should cite to the specific page and line numbers of the deposition.  The party should provide the relevant excerpts – and the three pages immediately preceding and following each excerpt – as an exhibit."  [Dkt. 28 at 2.]  Perhaps compliance with this procedure would have provided the Court with some clarity regarding the deponent's testimony.

scription of the exhibits she relies upon, making it difficult to determine whether they support her argument.  For example, she argues that "Chase reported 'XH' [account previously in dispute – now resolved] on six of the seven Forms ACDV, and reported 'XB' [account information disputed by consumer] on only one…."  [Dkt. 151 at 15.]  The Court's review of the ACDVs indicates that two are from before January 12, 2010 – the date of the first dispute at issue in this litigation.  [Dkts. 152-7; 152-10.]  Both of those did not list anything – not "XH" or "XB" – in the "CCC" (compliance condition code) field.  [*Id.*]  Only one ACDV listed "XB" in the CCC field, and that same ACDV also listed "XH."  [Dkt. 152-5.]  Putting aside whether "XH" was the proper code to use, the ACDVs do not indicate a "major discrepancy" as Ms. Walton claims.  Additionally, in support of this argument Ms. Walton cites case law relating to a governmental agency's obligations under § 1681s-2(a), [dkt. 151 at 16], which, as noted above, is irrelevant to her § 1681s-2(b) claim.

Finally, Ms. Walton does not support her third and fourth arguments – that Chase had an obligation to consider the underlying original Mortgage and account documents in conducting its investigation, and that Chase was required to consult with counsel before responding to the ACDVs – with relevant case law.  Specifically, she has cited portions from cases, taken out of context, which are limited to facts not present here.  *See Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (denying summary judgment in favor of bank where, in resolving dispute regarding whether plaintiff was a co-obligor of loan, bank did not consult underlying loan documents and, thus, "a jury could reasonably conclude that [the bank] acted unreasonably in failing to verify the accuracy of the information…."); *Scheel-Baggs v. Bank of Am.*, 575 F.Supp.2d 1031, 1040 (W.D. Wis. 2008) (denying furnisher's summary judgment motion on § 1681s-2(b) claim where furnisher had lost arbitration relating to disputed debt (which meant debt

was invalid), so knew or should have known after consulting with counsel who represented it in the arbitration that debt should not be reported as negative).

In sum, even assuming Ms. Walton properly moved for summary judgment on her §1681s-2(b) claim by requesting that relief in her response to Chase's motion, she has not presented undisputed and sufficient evidence showing that the reasonableness (or unreasonableness) of Chase's procedures "is beyond question." *Kennedy*, 641 F.Supp.2d at 792-93; s*ee also Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003) (district courts "are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them").  Instead, the Court finds that genuine issues of fact exist regarding whether Chase reasonably investigated Ms. Walton's disputes, making summary judgment in favor of either party on that claim inappropriate.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Ms. Walton's Motion for Partial Summary Judgment, [dkt. 100].  The motion is granted only to the extent that the Court finds as a matter of law that Ms. Walton's January 12, 2010, March 18, 2010, and October 25, 2010 letters constituted QWRs under RESPA, and that Chase violated RESPA by either failing to adequately respond to those requests or by failing to respond altogether.  The Court denies Ms. Walton's motion on the issue of whether Ms. Walton suffered actual damages caused by Chase's inadequate responses and, if so, in what amount.  The Court **GRANTS IN PART AND DENIES IN PART** Chase's Cross-Motion for Summary Judgment on Counts V and VI, [dkt. 120].  The motion is granted as to Ms. Walton's § 1681i claim, but denied as to Ms. Walton's § 1681s-2(b) claim.  Any motion for summary judgment made by Ms. Walton on her § 1681s-2(b) claim is also **DENIED**.  Finally, Ms. Walton's Motion for Leave to

File Sur-Reply Brief in Opposition to Defendant Chase Home Finance, LLC's Cross-Motion for Partial Summary Judgment Under Local Rule 56.1(d), [dkt. 162], is **DENIED AS MOOT**.

The following claims will proceed to trial: (1) the GBL claim (Count I); (2) the ICPSA claim (Count II); (3) the § 1681s-2(b) claim (Count VI); and (4) the RESPA claim (Count VII), but only as to the issue of whether Ms. Walton has suffered actual damages caused by Chase's inadequate responses under RESPA.  As to Ms. Walton's claim for an "accounting" under RES-PA (Count VIII), the Court **ORDERS** Ms. Walton to **SHOW CAUSE by December 28, 2012** why the Court  should not grant summary judgment in favor of Chase on that claim pursuant to Fed. R. Civ. P. 56(f) because it does not appear that RESPA recognizes a claim for an accounting.

The Court notes several upcoming deadlines set forth in the Case Management Plan and subsequent Orders, and expects the parties to strictly comply with all of those deadlines.  Any failure to do so may result in the imposition of sanctions.  The Court further requests that the magistrate judge confer with the parties in the very near future to ascertain whether an agreed resolution is possible.

12/18/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only**:


Michele Lorbieski Anderson
FROST BROWN TODD LLC
mlanderson@fbtlaw.com

Carl W. Butler
FROST BROWN TODD LLC
cbutler@fbtlaw.com

Ryan R. Frasher
RYAN FRASHER P.C.
rfrasher@frasherlaw.com

Thomas G. Hackney
JONES DAY
77 W. Wacker Drive
Chicago, IL 60601-1692

Oni N. Harton
BOSE MCKINNEY & EVANS, LLP
oharton@boselaw.com

David J. Jurkiewicz
BOSE MCKINNEY & EVANS, LLP
djurkiewicz@boselaw.com

David Michael Kasell
SADIS & GOLDBERG LLP
dkasell@sglawyers.com

Samuel Jay Lieberman
SADIS & GOLDBERG LLP
slieberman@sglawyers.com

Theodore J. Nowacki
BOSE MCKINNEY & EVANS, LLP
tnowacki@boselaw.com

Alan S. Townsend
BOSE MCKINNEY & EVANS, LLP
atownsend@boselaw.com